1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **GARDEN CITY BOXING,** | ) | **1:06-CV-1270 AWI NEW (WMW)** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs**. | ) | **FINDINGS AND RECOMMENDATIONS RE PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT** |
| | ) | |
| | ) | |
| **JUANA BRIANO, dba Lamont Club,** | ) | (Doc. 14) |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

        This is a civil action for damages in which the Clerk of the Court previously entered default.  Plaintiff  now seeks the entry of a default judgment in its favor and the awarding of damages in the amount of $102,500.00.   A hearing was held on this matter on May 10, 2007. Following the hearing and pursuant to the court's request, Plaintiff's counsel filed a supplemental declaration on June 18, 2007.

**BACKGROUND**

        In support of its application for default judgment, Plaintiff explains that it is an international distributor of sports and entertainment programming.  Plaintiff purchased the

domestic commercial exhibition rights to broadcast the Oscar De La Hoya v. Bernard Hopkins World Middleweight Championship Fight Program of September 18, 2004 ("the Program").  The Program included the main event along with undercard (preliminary) bouts, televised replay, and color commentary.  Plaintiff entered into sublicensing agreements with commercial entities throughout the United States wherein it granted limited public exhibition rights to these entities for the entertainment of their patrons.  The interstate transmission of the Program was encrypted and made available only to Plaintiff's customers, i.e., commercial locations which paid Plaintiff the license fees to exhibit the Program.

On September 18, 2004, an investigator observed the unlawful exhibition of the Program at Defendant's commercial establishment in Lamont,  California.  Plaintiff has submitted an affidavit to that effect from the investigator.   On September 15, 2006, Plaintiff filed suit against Defendant Juana Briano, individually and dba Lamont Club.  The complaint alleged that Defendant and or her agents unlawfully intercepted and intentionally exhibited the Program at Defendant's establishment for the purpose of direct or indirect commercial advantage, thereby violating Section 605 of the Federal Communications Act of 1934, as amended, as well as 47 U.S.C. Section 553.  Service of the summons and complaint in this action was made on Defendant on February 13, 2007.

Defendant did not file an answer or any other respond to Plaintiff's complaint.  Therefore, on March 9, 2007, following Plaintiff's request, the court entered default against Defendant in this action.

## JURISDICTION

The present action is brought pursuant to the Communications Act of 1934, as amended, 47 U.S.C. Section  605, et seq., and the Cable and Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. Section 553, et seq.  The complaint also contains a supplemental claim for conversion.   The court has federal question subject matter jurisdiction pursuant to 28 U.S.C. Section 1331.  The court has personal jurisdiction

over the parties, as the alleged wrongful acts were committed in Kern County, which is in this district.  Venue is proper in this district.

**LEGAL STANDARD**

Plaintiff, having obtained a default against Defendant, now seeks entry of a default judgment and an award of damages.  The controlling federal rule is Rule 55, Federal Rules of Civil Procedure, which provides in pertinent part as follows:

> (a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
> (b) Judgment. Judgment by default may be entered as follows:
> (1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.
>
> (2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.
> (c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

"'The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.' (citations omitted)." Televideo Systems, Inc. V. Heidenthal, 826 F.2d 915, 917 -18 (9th Cir. 1987) (quoting Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir.1977).

//

//

3

DISCUSSION

Statutes Relied Upon By Plaintiff

The first statute relied upon by Plaintiff in support of its claim for relief is the

Communications Act of 1934, as amended, 47 U.S.C. Section 605, et seq, under which

Plaintiff seeks damages of $50,000.  The relevant part of the statute provides as follows:

(a) Practices prohibited

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

.   .   .   .

(e) Penalties; civil actions; remedies; attorney's fees and costs; computation of

damages; regulation by State and local authorities

**(3)(A)** Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.

**(B)** The court--

1. **(I)** may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;

4

**(ii)** may award damages as described in subparagraph (C); and

**(iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.**

**(C)(I)** Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

**(I)** the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

**(II)** the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

**(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.**

**(iii)** In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

**(4)** Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

**(5)** The penalties under this subsection shall be in addition to those prescribed under any other provision of this subchapter.

**(6)** Nothing in this subsection shall prevent any State, or political subdivision thereof, from enacting or enforcing any laws with respect to the importation, sale,

manufacture, or distribution of equipment by any person with the intent of its use to assist in the interception or receipt of radio communications prohibited by subsection (a) of this section.

The second statute relied upon by Plaintiff in bringing this action is 47 U.S.C. Section 553, pursuant to which Plaintiff again seeks $50,000.00 in damages.  Section 553 provides in part as follows:

> (a) Unauthorized interception or receipt or assistance in intercepting or receiving service; "assist in intercepting or receiving" defined

> (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
> .   .   .   .
> (c) Civil action in district court; injunctions; damages; attorney's fees and costs; regulation by States or franchising authorities

> > **(1)** Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

> > **(2)** The court may--

> 1. **(A)** grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1) of this section;

> **(B)** award damages as described in paragraph (3); and

> **(C) direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails**.

> **(3)(A)** Damages awarded by any court under this section shall be computed in accordance with either of the following clauses:

> **(I)** the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's

6

gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

**(ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.**

**(B) In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000**.

**(C)** In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100.

**(D)** Nothing in this subchapter shall prevent any State or franchising authority from enacting or enforcing laws, consistent with this section, regarding the unauthorized interception or reception of any cable service or other communications service.

Plaintiff correctly argues that under Section 605(e)(3)(C)(ii), the court may award $100,000.00 in damages when it finds that the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain." Under Section 553(c)(3)(B)(III), the court may award up to $50,000.00 in damages where it finds that the violation was committed "willfully and for purposes of commercial advantage or private financial gain." Thus, the amount of damages Plaintiff seeks under the two federal statutes is within the amount allowed under the statutes.

Plaintiff seeks $2,500 in damages for the tort of conversion. There is no discussion in Plaintiff's original papers of how it reached this figure as a measure of damages.

Plaintiff's Offer of Proof re Damages

In support of its application for default judgment, Plaintiff offers the notarized affidavit of investigator Manuel C. Flores of CEI Claims Services. Mr. Flores states in his affidavit that on September 18, 2004, he observed the Program being broadcast on a 24" to 30" television located behind the bar at Defendant's establishment. He states that the capacity of the bar was approximately 200 people and that at the time he was in the bar, there

7

were approximately 100 people there.   He paid a cover charge of $5.00 to enter the bar.

Joseph M. Gagliardi, president of Plaintiff Garden City Boxing Club, also presents an affidavit.  Mr. Gagliardi states that the company's programming is not and cannot be mistakenly or innocently intercepted, but can only be "pirated" in one of several ways. He claims that the unchecked activity of "signal piracy" has resulted in the company's loss of millions of dollars in revenue.  He also claims that it has a detrimental effect on lawful residential and commercial customers of cable and satellite broadcasting, in increasing costs. Finally, he states that such piracy deprives local communities of tax revenues.  He asks the court to award the statutory maximum in damages.  Mr. Gagliardi argues that the court should not place undue weight on whether the Program was willfully promoted by Defendant, but should focus on the willful interception and exhibition of the Program.   He does not inform the court of what fee Defendant would have been charged if it had correctly signed up to exhibit  the Program.

Finally, Mr. Gagliardi argues as follows: "Clearly, this establishment with a physical location in a major metropolitan area, had no justification to steal our programming and exhibit it for its own financial benefit, except to deny our firm the commercial license fee to which [it] was rightfully entitled."   The court takes judicial notice of the fact that Lamont is located in Kern County.  As of the 2000 census, it had a population of 13,296.  Its median household income is $ 26,498, as compared to the national median of $44, 44684.

Plaintiff's Arguments

Plaintiff states correctly that under the relevant statutes, it can seek to recover either actual or statutory damages.  As set forth above, Plaintiff in this action seeks statutory damages.  It argues that such damages are appropriate where actual damages are difficult to prove, and claims that this is such a case.  It also claims that this is a case in which the court should enforce Congress's intent to deter piracy of cable broadcasts, by awarding statutory damages.

On the issue of whether it should be awarded damages under both federal statutes, Plaintiff acknowledge that some courts have chosen to award damages only under Section 605.  See Kingvision Pay Per View v. Ortega, 2002 WL 31855367 (N.D.Cal. 2002). Plaintiffs argue, however, that it "is not unheard of" for courts in this circuit to award damages pursuant to both statutes.  See Spencer Promotions Inc. v. 5th Quarter Enterprises, Inc., 1996 WL 438789 (N.D.Cal. 1996).

In his supplemental declaration, Plaintiff's Counsel addresses the issues requested by the court.  Counsel claims total costs in this matter of $953.78 and billable attorney's fees in the amount of $3,150.00, providing an accounting for each claim.  Further, Counsel explains that depending on the lawful load of Defendant's establishment, Defendant would have paid a lawful license fee of anywhere from $1300.00 to $6,000.00.  In addition to the license fee, commercial establishments are obligated to pay a $200.00 tech fee to have the signal provided to their establishment.

Conclusion and Recommendation

It is clear that the court has very broad discretion in fixing the amount of damages under the two statutes in question. The court finds, however,  that Plaintiff's general and unsubstantiated claims about millions of dollars of losses and the need for deterrence are insufficient to support the very large amount of damages requested.

Having read and considered the declarations, pleadings and exhibits present in connection with the motion for default judgment, the court HEREBY RECOMMENDS  that default judgment be entered against Defendant and for Plaintiff, and that damages be awarded as follows:

1)       for violation of 47 U.S.C. Section 605, the sum of $10,000.00;

2)       for violation of 47 U.S.C. section 553, the sum of $10,000.00;

3)       for violation of 47 U.S.C. section 553(c)(3)(B) and 605(e)(3)(C)ii), the sum of

$3,000;

4)      for reasonable attorney's fees pursuant to 47 U.S.C. section 553 and 605, the sum of $3,150.00;

5)      for costs, the sum of $953.78.

These Findings and Recommendation are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    July 9, 2007**                              **      /s/  William M. Wunderlich      **
                                                        UNITED STATES MAGISTRATE JUDGE